

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-13-00610-CR

RHONALD MARTINEZ A/K/A                                          APPELLANT
RONALD MARTINEZ

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1253416D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Rhonald Martinez a/k/a Ronald Martinez appeals his conviction
and forty-year sentence for possessing and intending to deliver between four and
two hundred grams of methamphetamine.[2] He contends that the trial court erred

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Health & Safety Code Ann. §§ 481.102(6), .112(a), (d) (West
2010).

by denying his motion to suppress evidence that the police obtained through an alleged violation of his constitutional rights. We affirm.

**Background Facts**

One night in September 2011, Fort Worth Police Department Officer Aaron Cade was on patrol in a "high crime, very high drug activity area" when he saw a car with a defective license plate and an expired registration.[3] Officer Cade conducted a traffic stop. As he approached appellant's car, appellant lowered his driver's side window, quickly raised it back up, and began stepping out of the car. Officer Cade instructed appellant to sit in the car, but appellant said that his window was not working. Nonetheless, appellant sat in the car and again lowered the window.

Officer Cade asked appellant for his identification and told him why he had been stopped. Then, Officer Cade asked him where he was going and what he was doing. Appellant could not answer those questions. He appeared to be "really nervous"; his hand shook as he handed Officer Cade his driver's license, his voice was unsteady, and he was sweating.[4] When Officer Cade asked appellant why he was nervous, appellant said, "I respect the police." Officer Cade asked whether appellant had anything illegal in the car, and appellant said

---

[3]The facts in this section are based on Officer Cade's testimony. Appellant testified to different facts.

[4]Officer Cade testified that it was not hot in the late night when he pulled appellant over.

2

that he did not.  Based on appellant's strange behavior, Officer Cade called for the help of another officer.

By consent, Officer Cade searched appellant's clothing but found nothing of consequence.  Officer Cade also asked if he could search appellant's car.  Appellant initially said yes.  But when Officer Cade attempted to open the car, he noticed that appellant had locked its doors and had left its keys in the ignition with the car still running.  Because appellant had given consent for Officer Cade to search the car but had then locked it with the keys inside, Officer Cade became "fairly certain . . . that [appellant] was hiding something."  Officer Cade called for a narcotics dog and detained appellant in the back of the patrol car.[5]  Appellant then withdrew his consent for the search of the car.

Minutes later, the narcotics dog—"Z"—arrived and "hit" on the driver's side door of appellant's car.  The police, believing that they had developed probable

---

[5]Officer Cade recognized that appellant did not have a weapon, had followed all instructions, and had not acted in a threatening way.  When asked why he had placed appellant in the patrol car, Officer Cade testified,

> [I]t was a couple of different reasons.  One is [that] when the dog gets on scene, you can't have anyone standing outside the vehicle.  The other one is just based on the way he was acting.  I didn't know what he was going to do.  It's safer for me and safer for him if I just put him in the back of my vehicle.
>
> . . . .
>
> It's been my experience that when people act nervous like that, when they do strange things like that, that sometimes . . . they may run, which poses . . . an officer safety issue.  They might fight, which again poses an officer safety issue.

cause to search the car, found a way to open it, searched it without obtaining a warrant, and discovered a baggie containing methamphetamine under the driver's side seat. Appellant's car also contained marijuana, more methamphetamine in the glove box, several empty baggies that had the potential to be used for packaging methamphetamine, and a syringe. Officer Cade arrested appellant without writing citations or warnings for the traffic offenses. From the traffic stop to appellant's arrest, thirteen minutes elapsed.

A grand jury indicted appellant with possessing while intending to deliver between four and two hundred grams of methamphetamine. Appellant's indictment included a paragraph alleging that he had been previously convicted of two felony offenses. The trial court appointed counsel to represent appellant. Appellant filed several pretrial motions, including a motion to suppress evidence "obtained as a result of illegal acts on behalf of the Government." Specifically, in the motion to suppress, appellant contended that his roadside detention was not reasonable.

The trial court denied appellant's motion to suppress. Appellant waived his right to a jury trial and pled not guilty. At trial, he testified that he did not own the car he was driving on the night of his arrest, that he never gave consent for Officer Cade to search the car or his clothes, and that he did not know drugs were in the car before his arrest.

4

The trial court convicted appellant, found the allegations in the indictment's enhancement paragraph to be true, received a presentence investigation report, and sentenced him to forty years' confinement. Appellant brought this appeal.

**Denial of Motion to Suppress**

In his only issue, appellant contends that the trial court erred by denying his motion to suppress. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).

Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, we must view the evidence in the light most favorable to the trial court's ruling on a motion to suppress. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the court's ruling, or when there are no explicit fact findings, we imply the necessary fact findings that would support the court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819; *see also Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013) ("[T]he question of whether a certain set of historical facts gives rise to reasonable suspicion is reviewed *de novo*.").

In the trial court, appellant argued,

> The . . . subjective . . . I think he may be hiding something, is not specific. It is not articulable. It is not physical. It is nothing more than speculation[,] and speculation is not sufficient, one, to detain someone as he was on a traffic citation . . . and, two, to search his vehicle as they did. . . .
>
> The law is pretty clear that a police officer's idea that somebody is nervous, particularly this police officer since he's stated he has no medical or psychological training, it is not sufficient. Although he is clearly vague and arbitrary and evasive, I think we have established for the Court that the business of the traffic citation was concluded when [Officer Cade] embarked on this fishing expedition, unauthorized detention, and illegal search of the vehicle and the trunk.

6

The State contended that appellant's traffic offenses justified the initial traffic stop and that appellant's acts after the stop justified a modestly prolonged detention. Appellant replied,

> I think the Court can see there may have been a legitimate basis for a traffic stop,[6] but . . . that legitimate basis . . . evaporated because this officer wasn't the least bit interested in the traffic stop or . . . discussing the traffic stop or doing any of the things that he was legitimately entitled to do, but rather, in fact . . . [was] intent on a fishing expedition.

The trial court overruled the motion to suppress, finding that traffic violations supported the original detention and that "given the circumstances involved in the case[,] [Officer Cade] also had a reasonable suspicion to continue to detain [appellant] for a brief period of time and to summon . . . the drug dog."

On appeal, appellant similarly argues that the extension of his original detention was unlawful because it was "longer than . . . necessary to effectuate the reason for the detention." He contends that Officer Cade did not develop "additional reasonable suspicion"—outside of the traffic offenses—to detain him beyond the time it would take to issue a warning or citation.

---

[6]Similarly, appellant testified at trial and has conceded on appeal that his initial detention for traffic violations was legitimate. Moreover, appellant does not expressly contend on appeal that the warrantless search of the car violated his rights for reasons unrelated to the extension of his detention until the narcotics dog arrived. When a "[narcotics] dog alerts, the presence of drugs is confirmed, and police may make a warrantless search." *Matthews v. State*, 431 S.W.3d 596, 603–04 (Tex. Crim. App. 2014). Finally, while appellant challenges the justification for his extended detention, he does not independently challenge the reasonableness of the length of that detention.

7

No evidence obtained by an officer in violation of the federal or Texas constitutions shall be admitted against the accused on the trial of any criminal case. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct by showing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant proves that a search or seizure occurred without a warrant, the State must establish that the search or seizure was reasonable. *Amador*, 221 S.W.3d at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A temporary detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity.[7] *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Matthews*, 431 S.W.3d at 602–03. Reasonable suspicion exists when based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude

---

[7]A traffic stop is a temporary detention for Fourth Amendment purposes. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Davis v. State*, 947 S.W.2d 240, 243–45 (Tex. Crim. App. 1997)).

that a particular person is, has been, or soon will be engaged in criminal activity. *Matthews*, 431 S.W.3d at 603; *Ford*, 158 S.W.3d at 492. Reasonable suspicion requires only "some minimal level of objective justification." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

In determining whether an officer has reasonable suspicion, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent. *Matthews*, 431 S.W.3d at 603. "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.*; *see Torrence v. State*, No. 02-10-00027-CR, 2011 WL 2518807, at *4 (Tex. App.—Fort Worth June 23, 2011, no pet.) (mem. op., not designated for publication) ("We do not separately evaluate and accept or reject the individual objective facts relied on to establish reasonable suspicion because doing so does not adequately consider the totality of the circumstances . . . .").

"[C]ircumstances as will raise suspicion that illegal conduct is taking place need not be criminal in themselves. Rather, they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be." *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). The facts must give rise to reasonable suspicion that "*something* of an apparently criminal nature is brewing" but need not show "that the detainee has committed, is committing, or is about to commit . . . a particular and distinctively identifiable penal offense." *Derichsweiler v. State*, 348 S.W.3d 906, 916–17 (Tex. Crim.

9

App.), *cert. denied*, 132 S. Ct. 150 (2011). At a minimum, the "suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Crockett*, 803 S.W.2d at 311; *see also Torrence*, 2011 WL 2518807, at *5 (recognizing that "objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person").

"Reasonable suspicion is not a carte blanche for a prolonged detention and investigation." *Matthews*, 431 S.W.3d at 603. Thus, after completion of the purposes of a legitimate traffic stop, the officer must have reasonable suspicion to believe that additional criminal activity has occurred or is being committed to justify continued detention of the suspect. *Richardson v. State*, 402 S.W.3d 272, 277 (Tex. App.—Fort Worth 2013, pet. ref'd) (explaining that a traffic stop may not be used as a fishing expedition for unrelated criminal activity); *see also McAnally v. State*, No. 02-08-00342-CR, 2009 WL 3956749, at *3 (Tex. App.—Fort Worth Nov. 19, 2009, pet. ref'd) (mem. op., not designated for publication) ("[I]f a valid traffic stop evolves into an investigative detention of other criminal activity (such as possession of a controlled substance) so that a canine sniff can take place, reasonable suspicion is required to prolong the detention . . . ."). Such reasonable suspicion may arise from information discovered by the officer during the lawful initial detention. *Richardson*, 402 S.W.3d at 277.

10

The question here is whether Officer Cade had specific and articulable facts that, when viewed collectively and when combined with rational inferences from those facts, led him to reasonably suspect that appellant had engaged in criminal activity apart from the traffic violations and therefore prolong appellant's detention until the narcotics dog arrived. In *Matthews*, in addition to an anonymous tip, the court of criminal appeals relied on the defendant's presence in a high-crime area late at night, his odd behavior of "just sitting" in a van with the engine off, his furtive movement to apparently conceal something near the driver's door, and his refusal to comply with officers' request to show his hands as facts supporting temporary detention before the arrival of a narcotics dog. 431 S.W.3d at 605.

Similarly, in *Hamal*, the court of criminal appeals held that an officer had reasonable suspicion to continue a traffic-offense-based detention for the arrival of a narcotics dog. 390 S.W.3d at 304. The court concluded that the late-night traffic stop, the defendant's nervousness (including her shaking hands),[8] her deception to the officer about her prior criminal record, and details about her prior criminal record (including arrests for drug offenses) supported the prolonged detention. *Id.* at 308; *see also Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim.

---

[8]Appellant implores us to not consider his nervousness as a factor affecting our reasonable suspicion determination. "Nervousness and a refusal to answer an officer's questions are insufficient by themselves to constitute reasonable suspicion," but nervous or evasive behavior is a relevant factor to determine reasonable suspicion. *Wade*, 422 S.W.3d at 670–71.

11

App. 2010) (explaining that location and time of day are relevant considerations in a reasonable-suspicion analysis); *Sieffert v. State*, 290 S.W.3d 478, 484 (Tex. App.—Amarillo 2009, no pet.) (explaining that "the time of day and the level of criminal activity in an area may be factors to consider in determining reasonable suspicion" but that a reasonable suspicion determination cannot stand on these facts alone).

Lower courts have likewise upheld continued detentions under facts similar to those in this case. Most recently, in *Adkins v. State*, one of our sister courts held that the police had reasonable suspicion to detain a defendant when the defendant was very nervous, was found in a high-crime area and near a crime scene, and made a furtive gesture by reaching into his waistband and placing something in a truck. No. 01-13-00627-CR, 2014 WL 5465701, at *3–4 (Tex. App.—Houston [1st Dist.] Oct. 28, 2014, no pet.) (mem. op., not designated for publication); *see also Amorella v. State*, 554 S.W.2d 700, 701–03 (Tex. Crim. App. 1977) (reasonable suspicion existed where defendant was with two other men with trunk open outside business after hours, in a known high-crime area for burglaries, and group immediately closed trunk and left after seeing officers).

Similarly, in *Erskin v. State*, the same court held that the police had reasonable suspicion for a prolonged roadside detention based on the defendant's unusual and nervous acts during a traffic stop and the stop's occurrence in an area known for drug crime. No. 01-08-00866-CR, 2010 WL 2025754, at *5–6 (Tex. App.—Houston [1st Dist.] May 20, 2010, no pet.) (mem.

12

op., not designated for publication); *see also Kimbell v. State*, No. 05-11-01211-CR, 2013 WL 4568049, at *6 (Tex. App.—Dallas Aug. 26, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that an officer had reasonable suspicion for an extended detention when the defendant was nervous as exhibited by her shaking hands, failed to make eye contact, and had a criminal history that included arrests for drug offenses); *Kelly v. State*, 331 S.W.3d 541, 549–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (concluding that a defendant's nervousness, furtive movements, and response to an officer's questions gave the officer reasonable suspicion to continue detention); *Sanchez v. State*, No. 13-07-00516-CR, 2008 WL 6842090, at *6–7 (Tex. App.—Corpus Christi Aug. 29, 2008, no pet.) (mem. op., not designated for publication) (concluding that the defendant's nervousness, his presence in a high-crime area, his erratic behavior, and his implausible story to the police created reasonable suspicion for extended detention); *Dinh v. State*, No. 02-02-00036-CR, 2003 WL 1090476, at *2 (Tex. App.—Fort Worth Mar. 13, 2003, no pet.) (mem. op., not designated for publication) ("We conclude that appellant's furtive movements combined with his extreme nervousness and denial of responsibility for anything a search might reveal gave rise to reasonable suspicion that he had contraband in the vehicle.")

We conclude that appellant's prolonged detention was justified for reasons similar to those in the cases cited above. Officer Cade saw appellant behave erratically and furtively; upon Officer Cade's approach, appellant rolled down his

13

driver's side window, quickly rolled it back up, began to get out of his car to meet Officer Cade, apparently lied to Officer Cade about the window's ability to function, and rolled it down again.[9] Appellant then showed signs of nervousness. He sweat profusely, had shaking hands, and had a trembling voice.

Next, appellant acted in a way that signaled that he might have been hiding something. First, he gave evasive or unsure answers about where he had been and where he was going. Then, after granting consent for Officer Cade to search the car, he prevented Officer Cade from doing so by locking the car with its keys in the ignition.[10] Finally, all of these actions occurred late at night and while appellant was in a "high crime, very high drug activity area."

None of these factors, when viewed individually, would generate reasonable suspicion of criminal activity. But we conclude that when viewed

---

[9]On appeal, appellant argues that his acts and statement regarding the window were not suspicious, reasoning,

> Rolling down the window and rolling it back up does not mean it is not broken. It could have been off the tracks or the mechanism [could have been] less than functional. . . . It is a common experience to roll down a car window and think that it is somehow malfunctioning and so the window is rolled up to prevent further damage.

Officer Cade did not testify that appellant presented this line of reasoning to him at the scene. We cannot conclude that it was unreasonable for Officer Cade to believe that appellant was acting oddly and suspiciously by rolling the window down and up and then nonetheless stating that the window was broken.

[10]During his testimony, appellant appeared to agree that a person's locking keys in a car with the car still running might create an appearance that the person is trying to keep something hidden.

collectively, these factors constitute sufficient specific and articulable facts, in light of Officer Cade's experience and personal knowledge and when coupled with reasonable inferences therefrom, to reasonably warrant appellant's continued detention.[11]  *See Matthews*, 431 S.W.3d at 605; *Simpson v. State*, 29 S.W.3d 324, 329 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (holding that there was reasonable suspicion when in addition to the defendant's nervousness, the defendant immediately got out of the car when he was stopped, put his keys in his pocket, and gave abrupt and unsure answers to the officer's questions).

Appellant contends that Officer Cade "did not even attempt to accomplish" writing a citation or warning for the traffic offenses.  But even if we were to assume that Officer Cade detained appellant with no intent of enforcing the traffic offenses, we would still conclude that he had an objective basis for the prolonged detention, which is all that the law requires.  *See Matthews*, 431 S.W.3d at 603.

For these reasons, we hold that the trial court did not err by overruling appellant's motion to suppress, and we overrule his only issue.

---

[11]Although appellant's testimony about events occurring after the traffic stop, which was elicited after the trial court's suppression ruling, differed from Officer Cade's testimony, the trial court was entitled to accept Officer Cade's testimony and reject appellant's testimony.  *See Cisneros v. State*, 290 S.W.3d 457, 465 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd).

15

## Conclusion

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 29, 2015