**Robert RICHARDSON, Appellant**

v.

**The STATE of Texas, State.**

**No. 02–11–00501–CR.**

Court of Appeals of Texas,
Fort Worth.

April 18, 2013.

Gene R. Beaty, Dallas, TX, Catherine Clare Bernhard, Red Oak, TX, for Appellant.

Paul Johnson, Criminal District Attorney, Charles E. Orbison, Assistant Criminal District Attorney, Chief Appellate Division, Matthew J. Whitten, Lara Tomlin, Michelle Buendia, Assistant Criminal District Attorneys for Denton County, Denton, TX, for State.

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I.  Introduction

Appellant Robert Richardson appeals following his guilty plea to driving while intoxicated, challenging the trial court's denial of his motion to suppress evidence. He contends in one point that the trial court erred by denying the motion to suppress because any detention beyond the issuance of a written warning for a traffic violation was unreasonable. We affirm.[1]

### II.  Background

At the suppression hearing, Trooper Preston Fulford testified that he worked the 4 p.m. to 3 a.m. shift and was on routine patrol for the Texas Department of Public Safety on August 25, 2010, when he observed a vehicle make an unsafe maneuver while traveling north on Interstate 35–E near the City of Lewisville. Trooper Fulford had been observing a motorcycle because it had been speeding, but he saw Richardson's vehicle, a Tahoe, change lanes without signaling and move into the path of the motorcycle, almost hitting it. Trooper Fulford followed the Tahoe and observed as it weaved within its lane of traffic and crossed into the other lane of traffic, and he testified that he decided to make a traffic stop for failing to drive in a single lane.

Trooper Fulford testified that he followed the vehicle until it was in a safer area to stop before activating his overhead lights. When the vehicle pulled over, it slowed down very quickly and almost completely stopped before moving off of the freeway. In addition, the vehicle stopped on the fog line, very close to the lanes of

---

1.  By affirming, we necessarily disagree with the dissent's contention that the trial court's ruling on Richardson's motion to suppress is not before us due to the lack of a written order denying it. The State is not attempting an interlocutory appeal of the grant of a motion to suppress. Rather, Richardson is appealing the judgment that followed the denial of his motion to suppress. Our holding in *State v. Cox* is therefore inapplicable here. *See* 235 S.W.3d 283, 284 (Tex.App.-Fort Worth 2007, no pet.) (en banc). This court has previously declined to adopt the dissent's contentions, and we do so again. *See, e.g., Dahlem v. State*, 322 S.W.3d 685, 690–92 (Tex.App.-Fort Worth 2010, pet. ref'd); *Bracken v. State*, 282 S.W.3d 94, 96 n. 1 (Tex.App.-Fort Worth 2009, pet. ref'd).

traffic on the freeway. Trooper Fulford testified that his main objective in stopping the vehicle was the traffic violation but that the possibility of intoxication was in his mind given the time of day and location.

Trooper Fulford testified that he approached Richardson's vehicle on the passenger side because of its proximity to the fog line and that he noticed a mild odor of an alcoholic beverage while speaking with Richardson through the passenger-side window. Richardson and the passengers in the vehicle denied having consumed alcohol.[2] Trooper Fulford advised Richardson that he had stopped him for failure to maintain a single lane and, while speaking with Richardson, noticed that there was a prescription pill bottle in the vehicle. Richardson told Trooper Fulford that the pill bottle belonged to his girlfriend, and Trooper Fulford asked Richardson to give him the pill bottle. Trooper Fulford testified that Richardson's hands were shaking when he handed him the pill bottle and that Richardson appeared nervous when he was asked about drinking and about the pill bottle.

Trooper Fulford testified that he, at that moment, was suspicious that Richardson was driving while intoxicated based on his driving behavior before the stop, the manner in which Richardson stopped the vehicle, the mild odor of alcohol, Richardson's nervousness, the pill bottle, and the passengers' denials of any alcohol use. Even so, Trooper Fulford testified that he had not yet decided to conduct a DWI investigation.

Trooper Fulford testified that he returned to his patrol car to process Richardson's driver's license after advising Richardson that he would receive a warn-

ing for the traffic violation. After processing Richardson's driver's license and preparing the written warning, Trooper Fulford returned to the passenger window of Richardson's vehicle. Trooper Fulford testified that, upon arriving at the passenger window of the vehicle, he noticed an "overwhelming" odor of breath mints and that he then decided to conduct a DWI investigation.

Trooper Fulford asked Richardson if he had put a breath mint into his mouth, Richardson confirmed that he had, and Trooper Fulford asked Richardson to step out of the vehicle. Trooper Fulford testified that he had not yet advised Richardson that he was free to leave or that the traffic stop was otherwise complete, but he could not recall if he had previously returned Richardson's driver's license or given him the written warning. He also testified that the reasons to suspect intoxication at that moment were the failure to maintain a single lane of traffic, stopping the vehicle very close to the fog line, the mild odor of alcoholic beverages, the passengers' denials of alcohol use, the empty pill bottle, and the breath mints.

Richardson testified that when Trooper Fulford returned from his patrol car and approached the passenger-side window of the Tahoe, Trooper Fulford handed him his driver's license and a warning ticket. Trooper Fulford then looked up and said, "Did you just take a breath mint?" Richardson testified that he had put a breath mint into his mouth, but he denied that it was to mask the odor of alcohol. Richardson also testified that he returned his driver's license and the warning ticket to Trooper Fulford after Trooper Fulford had asked him to exit the vehicle.

**2.** Trooper Fulford testified that Richardson was driving for a limousine service at the time of the stop, that Richardson was dressed as a professional driver would be dressed, and that the passengers reported having just left the airport.

The trial court, after reviewing the entire video of the traffic stop, denied Richardson's motion to suppress and dictated findings of fact onto the record. Among the trial court's findings of fact were that Trooper Fulford returned Richardson's driver's license to him contemporaneously with noticing the smell of breath mints and that the totality of the circumstances, up through and including the smell of the breath mints, provided Trooper Fulford with reasonable suspicion to continue the detention. Richardson pleaded guilty following the trial court's ruling on the motion to suppress, and this appeal followed.

## III. Discussion

Richardson argues in one point that the trial court erred by denying his motion to suppress. Richardson does not challenge the traffic stop itself, arguing instead that there was not reasonable suspicion to continue the detention beyond the issuance of the written warning.

### A. Applicable Law

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App.2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17,

24 (Tex.Crim.App.2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex.Crim.App.), *cert. denied*, 558 U.S. 1093, 130 S.Ct. 1015, 175 L.Ed.2d 622 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex.Crim.App.2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim.App.2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App.2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex.Crim.App.2010); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to wheth-

er an objective basis for the stop exists. *Id.*

## B. Analysis

Richardson argues that the purpose of the traffic stop was complete when Trooper Fulford returned his driver's license and gave him the written warning and that any detention beyond that moment was unreasonable. As mentioned, Richardson does not challenge the legality of the initial stop.

■ An investigative detention must be temporary, and the questioning must last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); *Balentine v. State,* 71 S.W.3d 763, 770–71 (Tex.Crim. App.2002); *Davis v. State,* 947 S.W.2d 240, 245 (Tex.Crim.App.1997). Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted for the purpose of issuing a citation. *Kothe v. State,* 152 S.W.3d 54, 65 n. 43 (Tex.Crim.App.2004) (citing *United States v. Wellman,* 185 F.3d 651, 656 (6th Cir.1999)); *see Coleman v. State,* 188 S.W.3d 708, 719 (Tex.App.-Tyler 2005, pet. ref'd) (holding that purpose of stop was complete upon the issuance of the citation), *cert. denied,* 549 U.S. 999, 127 S.Ct. 502, 166 L.Ed.2d 376 (2006). Further, once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis,* 947 S.W.2d at 243 (quoting *Ohio v. Robinette,* 519 U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996) (Ginsburg, J., concurring)).

■ However, if an officer develops reasonable suspicion during a valid traffic stop and detention that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *See Davis,* 947 S.W.2d at 244; *Haas v. State,* 172 S.W.3d 42, 52 (Tex.App.-Waco 2005, pet. ref'd); *see also United States v. Brigham,* 382 F.3d 500, 510–11 (5th Cir.2004); *McQuarters v. State,* 58 S.W.3d 250, 256 (Tex.App.-Fort Worth 2001, pet. ref'd). Additional facts and information discovered by an officer during a lawful detention may form the basis for a reasonable suspicion that another offense has been or is being committed. *Haas,* 172 S.W.3d at 52.

■ The question in this case is whether Trooper Fulford had specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that Richardson had engaged in criminal activity. *See Terry,* 392 U.S. at 21, 88 S.Ct. at 1880; *Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim. App.2001); *McQuarters,* 58 S.W.3d at 255. The trial court found that Trooper Fulford returned Richardson's driver's license contemporaneously with noticing the smell of breath mints. And before smelling the breath mints, Trooper Fulford had previously observed or learned of Richardson's failure to maintain a single lane of traffic, Richardson's quick deceleration when pulling the vehicle off of the highway, Richardson's parking the vehicle very close to the fog line, the empty pill bottle, Richardson's nervousness, the mild odor of alcoholic beverages, and the passengers' denials of alcohol use. These facts, which Trooper Fulford identified during his testimony at the suppression hearing, were sufficient to provide him with reasonable suspicion that Richardson had been driving while intoxicated. *See Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.-Fort Worth 1998, pet. ref'd) ("An officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts which would justify a continued investigatory detention.") (citing *Ortiz v. State,* 930 S.W.2d 849, 856 (Tex.App.-Tyler 1996, no pet.));

*see also Newman v. State*, No. 01–00–00106–CR, 2001 WL 279182, at *3 (Tex. App.-Houston [1st Dist.] Mar. 22, 2001, no pet.) (not designated for publication) (affirming denial of motion to suppress and holding trial court could have found reasonable suspicion based on the appellant's nervousness and strong odor of alcohol, which was inconsistent with the appellant's explanation). Trooper Fulford was thus justified in continuing the traffic stop to further investigate the driving while intoxicated offense. *See Davis*, 947 S.W.2d at 244; *Haas*, 172 S.W.3d at 52. We overrule Richardson's sole point.

## IV. Conclusion

Having overruled Richardson's sole point, we affirm the trial court's judgment.

DAUPHINOT, J., filed a dissenting opinion.

## DISSENTING OPINION

### LEE ANN DAUPHINOT, Justice.

I write yet again in dissent because, again, this court applies conflicting rules of procedure to trial courts' rulings on motions to suppress, depending on whether the trial court rules for the State or for the defense.

It has been well established that when a trial court rules against a defendant on a motion to suppress, and the trial court rules orally on the record and states its findings of fact and conclusions of law on the record, the trial court has satisfied all requirements concerning the ruling and the findings of fact and conclusions of law,[1] and the defendant has preserved the complaint for appellate review.[2] But, as in *State v. Cox*,[3] the majority here confuses the criminal rules of procedure with the civil rules of procedure. When the State prevails in defeating a defendant's motion to suppress, the trial court is not required to enter a separate written order apart from that dictated into the record.[4] When, however, the defense prevails, someone must draft a written order, which the trial judge must then sign and file in the record of the case.[5]

The effect of these schizophrenic rules of procedure is to substantially extend the appellate timetable for the State in appealing the ruling on a motion to suppress in which the defense prevails. Had the legislature intended for the State's timeline for appealing the granting of a motion to suppress to be substantially longer, the legislature would have provided for a different timeline by statute. As it is, this court has usurped the province of the legislature by creating a measure that extends the State's appellate timeline without approval of the legislature by the simple expedient of applying civil rather than criminal law.[6]

---

1. *See, e.g., Gaston v. State*, 435 S.W.2d 858, 860 (Tex.Crim.App.1969); *Horn v. State*, 699 S.W.2d 714, 716 (Tex.App.-Fort Worth 1985, no pet.).

2. *See* Tex.R. Evid. 103(a)(1); *Gearing v. State*, 685 S.W.2d 326, 329 (Tex.Crim.App.1985) (op. on reh'g) ("It is settled that when a pre-trial motion to suppress evidence is overruled, the accused need not subsequently object to the admission of the same evidence at trial in order to preserve error."), *overruled on other grounds by Woods v. State*, 956 S.W.2d 33 (Tex.Crim.App.1997).

3. 235 S.W.3d 283 (Tex.App.-Fort Worth 2007, no pet.) (en banc majority op.).

4. *See, e.g., Gaston*, 435 S.W.2d at 860; *Horn*, 699 S.W.2d at 716.

5. *See Cox*, 235 S.W.3d at 284–85.

6. *See Getts v. State*, 155 S.W.3d 153, 158 (Tex.Crim.App.2005) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004)).

I reiterate what I stated in *Bracken v. State*,[7]

> The trial court orally denied Appellant's motions to suppress but did not enter a written order. In his first point, Appellant argues that the trial court erred by denying his motions to suppress. This court has held that there is no appealable ruling on a motion to suppress unless the trial judge enters a written order. As noted in *Cox*, "[W]e notified the State of our concern that we lacked jurisdiction over the appeal because there is no appealable written order." We concluded in the opinion that we indeed lacked jurisdiction based on the absence of a written order.

> Following the *Rosenbaum* court, we interpreted "entered by the court" to mean the signing of a written order. We recognized that *Rosenbaum* dealt with former appellate rule 41(b)(1), which required an appealable order signed by the trial court, and which has been superseded by appellate rule 26.2(b), which does not. And we did not address the fact that although article 44.01(d) of the code of criminal procedure and appellate rule 26.2(b) speak of a sentence to be appealed, the appellate timetable runs not from the signing of the written judgment and sentence but from the pronouncement of sentence in open court.

> By holding in *Cox* that the trial court does not enter an order granting a motion to suppress until formally signing a written order, even though the ruling and findings of fact and conclusions of law have been pronounced on the record in open court, we allowed the State more than six extra months to perfect its appeal. Yet, in the case now before this court, the majority holds that the trial court enters an order denying a motion to suppress when the trial court pronounces its ruling orally. The majority states that the appeal lies because after a trial is concluded, the appellant is appealing from "a final judgment of conviction." But the majority confuses the criminal rules of procedure with the civil rules of procedure. While the appellate timetable in a civil case runs from the signing of the judgment, the appellate timetable in a criminal case begins to run when the sentence is pronounced orally in open court. The judgment may be signed days or even weeks later in a criminal case and has no effect on the appellate timetable.

> To remain consistent with the rule of *Cox*, we should hold that because there is no written order denying Appellant's motions to suppress, there is nothing to appeal from the suppression ruling.... The majority, however, holds that when a defendant appeals from a ruling on the motion to suppress, no written order is necessary.[8]

> Again, as in *Bracken*, I must respectfully dissent and would hold that we must be consistent with our ruling in *Cox*, erroneous though I believe it to be and in direct conflict with the clear mandate and intent of the legislature,[9] and hold that a trial court must go to the additional and unnecessary inconvenience of entering a written order and written findings of fact and conclusions of law apart from those already entered in the written record when ruling

---

7. 282 S.W.3d 94, 99–101 (Tex.App.-Fort Worth 2009, pet. ref'd) (Dauphinot, J., dissenting).

8. *Id.* (citations omitted).

9. *Cox*, 235 S.W.3d at 285–87 (Dauphinot, J., dissenting).

on a motion to suppress, no matter which side prevails.