**Affirmed and Opinion Filed March 10, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00522-CR

**CRAIGH SWEENEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-82214-2013**

# OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

This is a suppression hearing case arising out of the possession of methamphetamine. In two issues, the appellant challenges his continued detention after a traffic stop and the voluntariness of his consent to search during that detention. Because we conclude the officer had reasonable suspicion to continue appellant's detention beyond the initial traffic stop and appellant's consent to search was voluntary, we affirm the trial court's judgment.

## BACKGROUND

Appellant was stopped for speeding and methamphetamine was discovered after appellant subsequently consented to a search of his vehicle. Appellant was indicted for possession of less than one gram of methamphetamine, and moved to suppress the evidence.

Officer Craig Owens from the McKinney Police Department was the only witness at the motion to suppress hearing. The detention videotape and appellant's signed consent to search were admitted into evidence without objection.

Owens testified that he stopped appellant at approximately 9:00 a.m. for driving fifty-nine miles per hour in a forty miles per hour zone. When Owens approached the vehicle and asked for appellant's license and insurance card, he noticed that appellant was "jittery" and seemed to be "tweaking," that is, "under the influence of drugs." Owens testified that he can identify when an individual is simply nervous because of an encounter with the police, and appellant did not display this type of nervousness. Instead, his behavior was more in the nature of "uncontrolled movements as far as being under the influence of drugs, under something that's more of an upper."

When Owens returned to his vehicle to run a computer check on appellant's information, he also requested the police department's in-house records. Owens was reminded that he responded to a call three months earlier when someone reported an individual (later identified as appellant) passed out in his car. In this prior encounter, appellant had threatened to kill himself by overdosing on methamphetamine and Owens had to ride with him in the ambulance to restrain him on the way to the hospital. During that time, the officer noticed bags with white residue in appellant's shirt pocket.

In this case, after he checked appellant's records, Owens called for backup. He then returned to appellant's vehicle, and asked appellant to step out of the car. When he asked appellant if he had drugs on his person or in the car, appellant replied negatively. The officer reminded appellant of their prior encounter and asked when appellant last used drugs. Appellant's direct response is unintelligible on the videotape, but appellant can be heard saying that his near overdose "scared the crap out of him." Again, Owens asked about recent drug use.

–2–

Appellant responded by asking the officer, "legal or illegal" and then listed the legal drugs he was taking. Owens clarified that he was talking about illegal drugs, and asked appellant when he had last consumed or possessed illegal drugs. Appellant's response is not entirely clear on the videotape, but can be heard murmuring something like "about two weekends." Appellant later says that he is in rehab.

After Owens returned appellant's driver's license and insurance card, he asked appellant if he could search the car. When appellant declined, Owens radioed for the K-9 unit. Appellant was within earshot at the time. Then, Owens requested that appellant sit on the curb. Appellant did not comply, and began walking toward his car. Owens repeated the request, but again, appellant did not comply. Finally, Owens repeated the request in a more commanding tone, and appellant complied. As the trial judge observed at the hearing, and as the video reflects, Owens's tone was not hostile, but assertive.

As soon as appellant sat on the curb he said, "You want to search the car, fine—can I stand up and get my wallet?" Owens declined the request and told appellant he was going to let him think about whether he consented to a search. To this end, Owens observed, "You're kind of wavering back and forth." Owens informed appellant he had the right to refuse his consent to search. He further informed appellant that the K-9 unit was on the way and he could make his decision about consent to search when the K-9 unit arrived. Appellant asked if there was anything they could do before then, and Owens asked if appellant was now consenting to the search. Appellant replied, "Sir, I don't—every time I say yes to something I get myself in trouble, so I don't know what . . . ."

As they waited for the K-9 unit, Owens mused that perhaps there were drugs or residue in the car that appellant forgot about. In response, appellant offered that there was drug residue in

the car, as well as a pipe and other drug paraphernalia in a briefcase on the front seat. Owens and appellant then engaged in a conversation about appellant's near overdose three months earlier.

During the course of conversation, Owens told appellant, "You've been very jittery, very excitable, very all over the place, like somebody that's tweaking right now." Appellant can be heard mumbling something about a pot of coffee, and Owens replied, "Must be a really darn good . . . pot of coffee." Owens invited appellant to correct him if he was wrong, and asked for confirmation that appellant had consented to the search. Appellant agreed, and signed the consent to search form.

The search revealed baggies with white residue and two "meth pipes." During the search, appellant told the backup officer to have Owens look in his wallet. In the wallet, Owens found a baggie containing a substance that field-tested positive for methamphetamine.

When the suppression hearing concluded, the trial court denied the motion. Appellant pled guilty to possession of less than one gram of methamphetamine and was sentenced to two years' confinement in a state jail, probated for two years. Appellant timely perfected this appeal from the trial court's denial of his motion to suppress.

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

In two issues, appellant asserts the trial court erred in denying the motion to suppress because the detention exceeded the scope of the initial traffic stop. Appellant further argues that this unlawful detention tainted his consent to search and his consent to search was not voluntary.

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We afford almost total deference to a trial judge's determination of historical facts and mixed questions of law and fact that rely on a witness's credibility. *Id*. We review de novo pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Id.*

When, as here, the record is silent on the reasons for the court's ruling, or when there are no explicit fact findings, we imply the necessary fact findings that would support the court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see also Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

**ANALYSIS**

*Unreasonable Search and Seizure in a Motion to Suppress*

No evidence obtained by an officer in violation of the federal or Texas constitutions shall be admitted against the accused on the trial of any criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct by showing that a search or seizure occurred without a warrant. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). Once the defendant proves that a search or seizure occurred without a warrant, the State must establish that the search or seizure was reasonable. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

A temporary detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). To lawfully continue detaining the suspect after completing the purposes of a legitimate traffic stop, an officer must have reasonable suspicion to believe that additional criminal activity has occurred or is being committed. *Richardson v. State*, 402 S.W.3d 272, 277 (Tex. App.—Fort Worth 2013, pet. ref'd) (explaining that a traffic stop may not be used as a fishing expedition for unrelated criminal activity).

Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). Reasonable suspicion requires only "some minimal level of objective justification." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). In determining whether an officer has reasonable suspicion, we look at the total circumstances through an objective lens, disregarding the officer's subjective intent. *Matthews*, 431 S.W.3d at 603. "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.* But, "[r]easonable suspicion is not a carte blanche for a prolonged detention and investigation." *Matthews*, 431 S.W.3d at 603.

***Was the Continued Detention Unreasonable?***

In his first issue, appellant contends his continued detention was unreasonable because it exceeded the scope of the traffic stop without reasonable suspicion. The State responds that the officer had reasonable suspicion to continue the detention because the officer had specific, articulable facts that led him to reasonably conclude there was evidence of drug activity in appellant's car.

In support of his argument, appellant insists that his traffic violation, alleged prior drug use, and nervousness gave rise only to a "hunch," not a reasonable suspicion. Appellant also suggests we should not consider nervous behavior as a factor affecting the reasonable suspicion determination. This argument is misplaced. While "[n]ervousness and a refusal to answer an officer's questions are insufficient by themselves to constitute reasonable suspicion," nervous or evasive behavior is a relevant factor in the reasonable suspicion determination. *Wade v. Smith*, 422 S.W.3d 661, 670–71 (Tex. Crim. App. 2013); *see also LeBlanc v. State*, 138 S.W.3d 603,

608 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (considering nervousness, shaking, and lack of eye contact as factors to determine reasonable suspicion for continued detention); *Nutall v. State*, 87 S.W.3d 219, 222 (Tex. App.—Amarillo 2002, no pet.) (per curium) (considering rapid breathing as a reasonable suspicion factor). In addition, a record of prior criminal activity can also be considered in considering reasonable suspicion. *See Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.—Texarkana 1999, pet. ref'd) (considering prior drug offenses and nervousness in continued detention). And while any one factor standing alone may be insufficient, our inquiry requires considering the total circumstances. *See Mathews*, 431 S.W.3d at 603.

During the course of his encounter with appellant, Owens observed that appellant was jittery and exhibiting behavior consistent with someone under the influence of drugs. Appellant's responses to questions about his drug use were evasive and disjointed. At one point appellant stated that he was in rehab, which was inconsistent with the jittery behavior Owens observed. Owens had personal knowledge that appellant had possessed and nearly overdosed on methamphetamine three months earlier. Viewed collectively, these factors support the officer's reasonable suspicion that criminal activity was afoot and justify appellant's continued detention after the initial traffic stop concluded. *See Mathews*, 431 S.W.3d at 605. Appellant's first issue is overruled.

***Was the Search Unreasonable Because Consent Was Not Voluntary*?**

In his second issue, appellant asserts his consent to search was invalid because it was tainted by the unlawful detention and was coerced. We have already concluded that the detention in this case was lawful. Therefore, we address only whether appellant's consent to search was coerced.[1]

---

[1] We note that appellant admitted that he had drug paraphernalia and residue in his car prior to the time he consented to the search. Thus, even if appellant had not consented, the officer had probable cause to conduct a search. *See Glazner v. State*, 175 S.W.3d 262, 266 (Tex. Crim. App. 2005).

Searches conducted without a warrant are generally deemed unreasonable. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). A well-established exception to the requirement of both a search warrant and probable cause to search is a search conducted pursuant to consent, so long as the consent is voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). That is, if consent is voluntary, the search is not unreasonable. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). The validity and voluntariness of a person's consent to search is a question of fact to be determined by analyzing all of the circumstances of a particular situation. *Schneckloth*, 412 U.S. at 219; *Meekins,* 340 S.W.3d at 458–59. The State is required to prove the voluntariness of consent by clear and convincing evidence. *Reasor*, 12 S.W.3d at 818.

Appellant relies on the fact that he could hear Owens call the K-9 unit and "forced" him to sit on the curb to demonstrate that his consent was not voluntary. We reject this argument.

In determining whether an individual's consent to search was voluntary, courts may consider factors such as physical mistreatment, use of violence, threats of violence, promised or inducements, and deception or trickery. *See Meekins,* 340 S.W.3d at 460 n.26. None of these factors existed here. Courts may also consider any constitutional advice given to the defendant, whether the defendant was advised that he had the right to refuse consent, and the repetitiveness of the questioning. *Reasor*, 12 S.W.3d at 818. But, "[a]n officer's request for consent to search does not taint an otherwise consensual encounter as long as the police do not convey a message that compliance with their request is required." *Meekins,* 340 S.W.3d at 460 n.26.

Here, Owens advised appellant that he had the right to deny his consent to search. When appellant vacillated, Owens did not push him. When appellant first appeared to consent, Owens did not immediately conduct a search. Instead, he gave appellant the opportunity to consider his consent. After some time had passed, Owens again gave appellant the opportunity to reconsider,

and confirmed his understanding that appellant had consented. Throughout this time, Owens tone was non-confrontational. Approximately eleven minutes elapsed between the time appellant was asked to sit on the curb and the time he signed the consent form. In signing the consent to search form, appellant affirmed that his consent was voluntary and not coerced. Considering all of the circumstances and giving proper deference to the trial court's determination, we conclude the State proved by clear and convincing evidence that appellant consented to the search of his car. Appellant's second issue is overruled.

Based on the foregoing, we conclude the trial court did not err in denying appellant's motion to suppress. The trial court's judgment is affirmed.

Do Not Publish
TEX. R. APP. P. 47
140522F.U05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CRAIGH SWEENEY, Appellant

No. 05-14-00522-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-82214-2013.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 10, 2015.