**Affirmed and Opinion Filed March 17, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01355-CR

**BENJAMIN ANDERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 31815-86**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Bridges

The State charged appellant Benjamin Anderson with (1) fraudulent use or possession of identifying information; (2) possession of a controlled substance, less than one gram; and (3) tampering with a government record. Anderson filed a motion to suppress, which the trial court denied. Anderson then pleaded guilty to tampering with a government record and was sentenced to fifteen months state jail time.

On appeal, he argues the officer did not have reasonable suspicion to detain and question him further after the initial reason for the traffic stop ended, and the officer's questions during the stop violated the reasonableness standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). We affirm the trial court's judgment.

**Background**

The following facts are from the officers that testified at the suppression hearing. Around 1:45 p.m. on March 13, 2013, Officer John Abernathy was on patrol when he observed a "clean, white vehicle" pass him in the fast lane. He testified it caught his attention because it was really clean. He then observed the car traveling sixty-five or sixty-seven-miles-per-hour in a fifty-five-miles-per-hour construction zone. He initiated a traffic stop. Officer Abernathy admitted that very early into the stop, he planned to issue a verbal warning for speeding; however, that later changed.

Anderson first identified himself to Officer Abernathy as Michael Diedrick and provided a driver's license confirming the name. Anderson also admitted the car was a rental, and he provided a rental agreement with the name Michael Diedrick.

Officer Abernathy had specialized training in drug interdiction, in which he learned to look at certain cars and indicators pre and post stop, which would lead an officer to believe criminal activity was occurring.

Officer Abernathy observed two cell phones in plain view. Based on his training and experience, he explained two cell phones could indicate involvement in criminal activity because a person would use one cell phone for personal business and use the second for criminal activity.

Officer Abernathy also observed two air fresheners attached to the rear view mirror of the car. He testified their presence raised his suspicion because it is unusual to see air fresheners in a rental car unless someone is trying to mask the odor of narcotics.

When Officer Abernathy asked Anderson about his travels, Anderson said he was coming from Louisiana and headed to Colorado. Officer Abernathy testified Anderson was not driving the most direct route to his destination.

Officer Abernathy asked Anderson if he had any prior arrests, and Anderson said yes. He first said he had been arrested for DUI in Louisiana, but later said the arrest occurred in Minnesota. Because of the change in story, Officer Abernathy believed Anderson was lying to him about his past. His suspicions were confirmed when dispatch ran Michael Diedrick's criminal history, and Diedrick had criminal records in New York, Montana, and Colorado. Diedrick did not have any criminal history from Louisiana or Minnesota. Officer Abernathy, "knew at that point that he was not being honest with me."

Between the time Officer Abernathy contacted dispatch and received the return information, he contacted Cody Henderson, a DPS trooper with more experience in criminal interdiction. Officer Abernathy asked Trooper Henderson if he should get a little more information from Anderson and try to clarify his story. Trooper Henderson testified he expressed his suspicion about the situation to Officer Abernathy. Trooper Henderson specifically testified the presence of air fresheners in a rental car was "a big indicator," and Anderson was traveling from "a known drug area to another drug area."

After talking with Trooper Henderson, Officer Abernathy returned to the car and asked Anderson about his work. Anderson said he started a construction company that worked on renovations. Officer Abernathy testified Anderson's answer was "very hesitant, and he mumbled a few times, seemed nervous."

At this point, approximately twelve minutes into the stop, Officer Abernathy asked to look inside the vehicle. Anderson answered, "I don't consent to a search, sir." Officer Abernathy said his response was not a "normal" response because Anderson used "legal jargon."

Officer Abernathy called for a K-9 unit to conduct an open air search of the vehicle. While he made this phone call, Officer Ross arrived as the back up officer. Officer Ross talked

with Anderson. Anderson told him different information regarding his employment and his prior criminal history than the information he relayed to Officer Abernathy.

Deputy Ben Schoeff and his dog, Nurmo, arrived approximately thirty minutes later. Deputy Schoeff testified Nurmo was trained to alert on marijuana, methamphetamine, heroin, and cocaine. Nurmo alerted by biting, barking, or scratching at the source of the odor.

During Nurmo's open air search, he stopped at the driver's door handle and alerted by biting and pawing at the handle. Based on Nurmo's alert, Officer Abernathy, Trooper Henderson, and Deputy Schoeff conducted a search of Anderson's vehicle.

In the trunk, they found a printer, along with some plain paper and a page with printed blank checks. A laptop, photo paper, real estate application packet, forms kit, and opened packets of blank checks were also located inside the trunk. They also found a backpack with a small baggie containing what appeared to be three hydrocodone pills and a small amount of green residue Officer Abernathy believed to be marijuana. The backpack contained a second baggie containing marijuana residue, a grenade-style crusher used to separate a marijuana plant, and another smaller baggie with a small amount of marijuana. Two thousand dollars was also found inside the backpack.

Anderson was then put in handcuffs and searched. Inside Anderson's shoe, Officer Abernathy found a bag containing two blunts, which he described as "a green leafy substance believed to be marijuana wrapped in cigar paper.

During the continued search of the car, Deputy Schoeff found a container attached to a key ring in the ignition that contained marijuana residue. Officer Abernathy found ID cards from Arkansas, Tennessee, Colorado, and Louisiana. He also found a birth certificate and social security cards. Based on all these items, Officer Abernathy believed Anderson was involved in ID theft or forgery.

Anderson was arrested and taken into custody. Anderson's true identity was not discovered until approximately thirty-six hours after his arrest.

At the conclusion of the suppression hearing, the trial court discussed its concerns about what occurred after Officer Abernathy told Anderson he was only going to receive a verbal warning for speeding. "The issue is, was there justification for the continued detention after Officer Abernathy said, I'm just going to give you a warning." After further argument from both sides, the court stated the following:

> The determination of the case leads the Court to believe reasonable suspicion for the officer to continue the search must have been determined prior to or at the same time as the officer concludes his reason for the initial stop. Twenty-five seconds into the stop, the officer informed the defendant that he was going to give him a verbal warning, and he told that to - - again that to the defendant later on.
>
> Hence, we must examine what the officer would have known 25 seconds in. . . . I find no probative value whatsoever that the defendant was driving a clean car.
>
> The officer also would have observed the two cellphones, and while they could have been used for almost anything, including one for personal use and one for business use, it is also consistent with drug traffic to have two phones.
>
> Air freshener in a new rental car would be unusual. And a rent-a-car, itself, would be some indication of possible drug use because if somebody's caught in the car with drugs, it won't be confiscated because it's a rental car.
>
> The question is, is this reasonable suspicion. The Court believes it is and denies the Motion for Suppression.

Anderson later entered a guilty plea to tampering with a government record, received fifteen months state jail time, and the State abandoned the remaining two counts in the indictment. This appeal followed.

**Discussion**

Anderson argues on appeal that Officer Abernathy did not have reasonable suspicion to detain and question him further after the initial reason for the traffic stop ended, and the officer's questions during the stop violated the reasonableness standard set forth in *Terry*. The State failed to timely file a response brief.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We defer to the trial court's determination of historical facts, while we review the application of the law de novo. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). When, as in this case, the trial court makes no findings of historical facts, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry*, 392 U.S. at 21. An officer conducts a lawful temporary detention when he has reasonable suspicion to believe an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 40 (Tex. Crim. App. 2010). Articulable facts must amount to more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime is in progress. *Id.* In deciding whether reasonable suspicion exists, we look at the facts available to the officer at the time of the detention. *Id.* This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Richardson v. State*, 402 S.W.3d 272, 276–77 (Tex. Crim. App. 2013).

An investigative detention must be temporary, and the questioning must last no longer than is necessary to effectuate the purpose of the stop. *Balentine v. State*, 71 S.W.3d 763, 770 (Tex. Crim. App. 2002). During the detention, an officer may inquire into matters unrelated to purposes of the traffic stop so long as the stop is not unreasonably extended. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted for the purpose of issuing a citation. *Id*. at 64. Further, once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Richardson*, 402 S.W.3d at 277. However, if an officer develops reasonable suspicion during a valid traffic stop that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *Id*.

Anderson concedes Officer Abernathy conducted a reasonable detention under *Terry* when he stopped Anderson for speeding and asked for his license and rental car agreement. Anderson then argues he "had done nothing at this point to raise any suspicion with the officer." We disagree. Officer Abernathy testified he observed air fresheners hanging in the rental car, which was unusual, and he explained air fresheners were often used to mask the smell of narcotics. Officer Abernathy also observed two cell phones in the passenger seat, which was another indicator of possible criminal activity. We agree with the trial court's conclusion that this information, which Officer Abernathy had in the first twenty-five seconds of the stop, provided him with reasonable suspicion to continue the detention.

Under these facts, however, we do not agree the trial court's reasonable suspicion inquiry was in fact limited to what Officer Abernathy observed in the first twenty-five seconds prior to telling Anderson he would receive only a warning for speeding. Officer Abernathy's question about where Anderson was traveling, which occurred approximately ninety seconds into the stop, and his question about Anderson's prior arrests, which occurred approximately three minutes and

fifty seconds into the stop, did not unreasonably extend the traffic stop. *Id*. (officer may inquire into matters unrelated to purposes of the traffic stop so long as the stop is not unreasonably extended). Further, Officer Abernathy testified he also found it suspicious Anderson was driving from Louisiana to Colorado on an indirect route. Officer Abernathy gathered all of this information less than four minutes into the stop.

Moreover, at this point, Officer Abernathy had not checked Anderson's driver's license, car registration, or run an outstanding warrant check, all of which are considered reasonable actions by an officer during a traffic stop. *Kothe*, 152 S.W.3d at 63 (traffic stop may last as long as reasonably necessary to check license, car registration, and conduct a computer check of the information). And as the Texas Court of Criminal Appeals has stated, "We do not intend to create a bright line rule that would automatically make an investigative detention unreasonable the moment that the initial reason for the traffic stop ends." *St. George v. State*, 237 S.W.3d 720, 727 (Tex. Crim. App. 2007). Here, Officer Abernathy had reasonable suspicion to continue to ask Anderson questions, particularly while he waited for dispatch to return with information regarding his criminal history check.

Dispatch provided a criminal history a little over nine minutes into the stop. Officer Abernathy then learned the information Anderson provided did not match that provided by dispatch; therefore, Officer Abernathy suspected Anderson was being untruthful about other information. This provided further information upon which Officer Abernathy was justified in continuing the traffic stop for further investigation. *See Richardson*, 402 S.W.3d at 277 (if an officer develops reasonable suspicion during a valid traffic stop continued detention is justified).

Accordingly, Officer Abernathy had reasonable suspicion to detain and question Anderson, and his questions did not violate *Terry* by extending the scope of the traffic stop beyond the initial purpose of the stop. As such, the trial court did not err in denying his motion

to suppress, and the incriminating evidence found inside Anderson's car is not fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (concluding all evidence derived from the exploitation of an illegal detention, search, or seizure must be suppressed unless the State shows a break in the chain of events sufficient to refute the inference the evidence was obtained in violation of the Fourth Amendment); *see also Grieve v. State*, No. 05-07-00156-CR, 2008 WL 2152890, at *5 (Tex. App.—Dallas May 22, 2008, no pet.) (not designated for publication).  We overrule Anderson's arguments.

## Conclusion

The judgment of the trial court is affirmed.

Do Not Publish
TEX. R. APP. P. 47
131355F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE