# PD-0237-15

ÚÖËGHI ËÍ ⁄⁄⁄⁄⁄
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/7/2015 9:37:41 AM
Accepted 5/7/2015 1:26:31 PM
ABEL ACOSTA
CLERK

NO._____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

**RHONALD MARTINEZ**
Petitioner

v.

**THE STATE OF TEXAS**
Respondent

---

Petition is in Cause No. 1253416D from the
297th Criminal District Court of Tarrant County, Texas,
and Cause No. 02-13-00610-CR in the
Court of Appeals for the Second District of Texas

---

**FIRST AMENDED PETITION FOR DISCRETIONARY REVIEW**

---

FILED IN
COURT OF CRIMINAL APPEALS

May 7, 2015

ABEL ACOSTA, CLERK

Abe Factor
TBN: 06768500
Factor, Campbell & Collins
Attorneys at Law
5719 Airport Freeway
Phone: (817) 222-3333
Fax: (817) 222-3330
Email: lawfactor@yahoo.com
Attorneys for Petitioner
Rhonald Martinez

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's final judgment, as well as the names and addresses of all trial and appellate counsel.

| | |
|---|---|
| Trial Court Judge: | Hon. Everett Young |
| Petitioner: | Rhonald Martinez |
| Petitioner's Trial Counsel: | Hon. Abe Factor<br>TBN: 06768500<br>Factor, Campbell & Collins<br>Attorneys at Law<br>5719 Airport Freeway<br>Fort Worth, Texas 76117 |
| Petitioner's Counsel on Appeal: | Hon. Abe Factor<br>TBN: 06768500<br>Factor, Campbell & Collins<br>Attorneys at Law<br>5719 Airport Freeway<br>Fort Worth, Texas 76117<br>Phone: (817) 222-3333 |
| Appellee: | The State of Texas |
| Appellee's Trial Counsel: | Hon. Lisa Callahan<br>TBN: 01160700<br>District Attorney's Office<br>401 W. Belknap<br>Fort Worth, Texas 76196 |
| Appellee's Counsel on Appeal: | Hon. Charles Mallin<br>TBN: 12867400<br>Hon. Andy Porter<br>TBN: 24007857<br>District Attorney's Office<br> 401 W. Belknap Street<br>Fort Worth, Texas  76196 |

# TABLE OF CONTENTS

*page*

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

REASONS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    The Court of Appeals erred when it affirmed the trial court's
      denial of Mr. Martinez' motion to suppress. . . . . . . . . . . . . . . . . . . . . . .2

      A.    *Facts*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

      B.    *Opinion Below*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

      C.    *Standard of Review*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

      D.    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

# INDEX OF AUTHORITIES

*Cases*                                                                 *page*

*Martinez v. State,*
>   02-13-00610-CR, 2015 WL 392729 (Tex. App.–
>       Fort Worth, January 29, 2015, no. pet. h.)
>           (mem. op., not designated for publication). . . . . . . . . . . . . .1-2, 4

*Guzman v. State,*
>   955 S.W.2d 85 (Tex. Crim. App. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Alberty v. United States,*
>   162 U.S. 499 (1896). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brother v. State,*
>   85 S.W.3d 377 (Tex. App.—Fort Worth 2002,
>       *affirmed*, 166 S.W.3d 255 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . 4-5

*Carmouche v. State,*
>   10 S.W.3d 323 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Crain v. State,*
>   315 S.W.3d 43 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . .10

*Derichsweiler v. State,*
>   348 S.W.3d 906 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Dortch,*
>   199 F.3d 193 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Hamal v. State,*
>   390 S.W.3d 302 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . . . . . . . .8

*United States v. Himmelwright,*
>   551 F.2d 991 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*United States v. Jones,*
>   234 F.3d 234 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*United States v. Mallides,*
    473 F.2d 859 (9th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McQuarters v. State,*
    58 S.W.3d 250 (Tex. App.—Fort Worth 2001, pet. ref'd). . . . . . . . . . . . . . . . .8

*United States v. Portillo- Aguirre,*
    311 F.3d 647 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rodriguez v. United States,*
    _ _ _S.Ct._ _ _, 2015 WL 1780927 (U.S. Apr. 21, 2015). . . . . . . . . . . . . . . .5, 6

*Scott v. State,*
    549 S.W.2d 170 (Tex. Crim. App. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Terry v. Ohio,*
    392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*United States v. Valdez,*
    267 F.3d 395 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Wade v. State,*
    422 S.W.3d 661 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Wolf v. State,*
    137 S.W.3d 797 (Tex. App.—Waco 2004, no pet.). . . . . . . . . . . . . . . . . . . . . . . 7

## STATEMENT REGARDING ORAL ARGUMENT

Because Petitioner does not believe that oral argument will materially assist the Court in its evaluation of matters raised by this pleading, Petitioner respectfully waives oral argument.

## STATEMENT OF THE CASE

On October 5, 2011, Appellant Rhonald Martinez ("Mr. Martinez" or "Petitioner") was indicted for possession of a controlled substance more than four grams but less than two hundred grams with intent to deliver. (C.R. 6). On August 1, 2013, a trial on the merits was had before the court in the 297th Judicial District of Tarrant County, Texas. (R.R. III: *passim*, C.R. 127). Appellant filed a Motion to Suppress and was denied by the court. (C.R. 45, 49). At the conclusion of testimony, the court found the Appellant guilty as charged in the indictment. (R.R. III 191). The court ordered a presentence report be prepared and on December 20, 2013 the Appellant was sentenced to 40 years confinement in the Texas Department of Criminal Justice. (C.R. 156). Appellant filed a timely notice of appeal on December 20, 2013. (C.R. 162). The court certified Appellant's right to appeal. (C.R. 161).

## STATEMENT OF PROCEDURAL HISTORY

The opinion by the Second Court of Appeals affirming Mr. Martinez' conviction was handed down on January 29, 2015. *See Martinez v. State*, 02-13-00610-CR, 2015 WL 392729 (Tex. App.–Fort Worth, January 29, 2015, no. pet. h.) (mem. op.,

not designated for publication). This timely Petition for Discretionary review ensued.

## GROUNDS FOR REVIEW

## GROUND FOR REVIEW ONE

**I.    The Court of Appeals erred when it affirmed the trial court's denial of Mr. Martinez' motion to suppress.**

## REASONS FOR REVIEW

1.    The decision by the Second Court of Appeals has decided an important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals.

2.    The Second Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

## ARGUMENT

## GROUND FOR REVIEW ONE (Restated)

**I.    The Court of Appeals erred when it affirmed the trial court's denial of Mr. Martinez' motion to suppress.**

Because this petition is predicated upon error by the Second Court of Appeals in its review of Mr. Martinez' complaint on appeal, a review of the evidence presented and events which transpired below is in order.

2

**A.** *Facts*

On September 1, 2011, Rhonald Martinez was stopped by Officer Cade with the Fort Worth Police Department for an expired registration and defective license plate light. (R.R. III 8). Officer Cade approached the vehicle and he testified that Mr. Martinez was acting strange and looked nervous. (R.R. III 13). When asked to exit the vehicle, Mr. Martinez left the vehicle running and locked the door. (R.R. III 16). Officer Cade asked if he could search the vehicle and he testified that Mr. Martinez consented. (R.R. III 15). Officer Cade then placed Mr. Martinez in the back of the patrol car. (R.R. III 17) Mr. Martinez then withdrew his consent prior to the search. (RR III 15).

After taking Mr. Martinez into custody and subsequent to his withdrawal of consent, a canine unit arrived and did a sweep around the vehicle and the dog alerted on the vehicle. (R.R. III 19). Corporal Fineman arrived on scene and got the locked car door open and found a clear plastic baggie which contained what appeared to be methamphetamine under the driver's seat. (R.R. III 19). Officer Cade then found additional bags in the glove box. (R.R. III 20).

On cross examination, Officer Cade conceded that after initially approaching the vehicle and asking for identification, there was no more conversation about the expired registration or the license plate light. (R.R. III 40). After a pat down search,

3

Officer Cade found no weapons. (R.R. III 42). After a visual inspection, Officer Cade found no weapons or anything threatening. (R.R. III 45). Officer Cade detained Mr. Martinez prior to the search and had no further communication. (R.R. III 61).

After hearing testimony and arguments of counsel, the court denied the Motion to Suppress. (R.R. III 125). The court also found Mr. Martinez guilty as charged in the indictment. (R.R. III 191). After a presentence report was prepared and admitted, the court sentenced Mr. Martinez to 40 years confinement. (R.R. IV 12, C.R. 156).

**B.    *Opinion Below***

In its Opinion, the Second Court of Appeals correctly identified the standard of review to be used when analyzing a challenge to the trial court's denial of a motion to suppress, *see Martinez*, 02-13-00610-CR, 2015 WL 392729 at *1-*2, yet incorrectly held that the trial court did not abuse its discretion in denying Martinez' request. *See id.* at *3.

**C.    *Standard of Review***

When reviewing a trial court's decision to deny a motion to suppress, an appellate court should afford almost total deference to the trial court's ruling of the historical facts that are supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When the material facts are not in dispute, an appellate court should review matters of law *de novo*. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.

4

Crim. App. 2000); *Brother v. State*, 85 S.W.3d 377, 380-81 (Tex. App.—Fort Worth 2002, *affirmed*, 166 S.W.3d 255 (Tex. Crim. App. 2005)).

**D.    *Discussion***

A seizure for a traffic violation justifies a police investigation of that violation. "'[A] relatively brief encounter,' a routine traffic stop is 'more analogous to a so-called 'Terry[1] stop'. . .than to a formal arrest.'" *Rodriguez v. United States*, _ _ _S.Ct._ _ _, 2015 WL 1780927, at *5 (U.S. Apr. 21, 2015) (citations omitted). Like a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, *Id*. citing *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), and attend to related safety concerns. *Id*.; *See also Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). Because addressing the infraction is the purpose of the stop, it may "'last no longer than is necessary to effectuate th[at] purpose.'" *Rodriguez v. United States*, _ _ _S.Ct._ _ _, 2015 WL 1780927, at *5. Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. *Id*.; *see also United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (in

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation").

Once the purpose of a lawful detention has terminated, extending the detention is a violation of the Fourth Amendment unless the detaining officer has additional reasonable suspicion of criminal wrongdoing. *United States v. Portillo-Aguirre*, 311 F.3d 647, 655 (5th Cir. 2002). Reasonable suspicion must be based on articulable facts that are indicative of criminal activity. *Terry*, 392 U.S. at 21-22; *Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Actions that are as indicative of non-criminal activity as criminal activity cannot be the basis of reasonable suspicion when view under the totality of the circumstances. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013). The test as to whether or not an extended detention violates the Fourth Amendment is 1) whether or not the detention was justified from its inception and 2) whether or not the scope of the detention was related to the circumstances that justified the initial detention. *Terry*, 392 U.S. at 19-20; *United States v. Valdez*, 267 F.3d 395, 398 (5th Cir. 2001). To go further, the  officer must develop additional reasonable suspicion to justify extending the detention.

Granted Mr. Martinez was not detained very long, but the amount of time a person is detained after the purpose for the detention is effectuated is irrelevant.

6

*Portillo-Aguirre*, 311 F.3d at 647, *Wolf v. State*, 137 S.W.3d 797, 800 (Tex. App.—Waco 2004, no pet.); *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000); *United States v. Dortch*, 199 F.3d 193, 199-200 (5th Cir. 1999). As soon as the investigation into Mr. Martinez's registration and license plate lamp ended, the purpose was effectuated. *Rodriguez v. United States*, _ _ _S.Ct._ _ _, 2015 WL 1780927, at *5-6 ("Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.")(citations omitted). In *Rodriguez*, the United State's Supreme Court reiterated the fact that absent reasonable suspicion, a traffic stop may not be extended beyond the time necessary to effectuate the purpose of the traffic stop. *Id*. citing *Caballes*, 543 U.S., at 406, 407, 125 S.Ct. 834.

Here, the actions of Mr. Martinez did not justify an extension of the detention. After the first few questions that the officer asked Mr. Martinez, the investigation into the reason for the detention ended. (R.R. III 40). It was at that point Officer Cade decided to call the canine unit. (R.R. III 17). Officer Cade at this point did not have reasonable suspicion to continue the detention because he testified to no articulable facts that were indicative of criminal activity. The facts testified to by

7

Officer Cade that he believed gave him reasonable suspicion were: 1) at the initiation of the traffic stop, Mr. Martinez rolled down his window and rolled it back up, 2) he was nervous, 3) he stepped out of the vehicle and shut the door while locking it, and 4) he was in a "high crime" neighborhood. (R.R. III 13, R.R. III 14).

*Articulable Facts – The Window*

Officer Cade testified that Mr. Martinez rolled down his window, rolled it back up and told him that the window was broken and opted to open the door. (R.R. III 10). This was somehow suspicious to Officer Cade. (R.R. III 11). This is in no way indicative of criminal activity. Rolling down the window and rolling it back up does not mean it is not broken. It could have been off the tracks or the mechanism may be less than functional. It is in no way even untruthful to roll a window down and back up and think that is broken. It is a common experience to roll down a car window and think that it is somehow malfunctioning and so the window is rolled up to prevent further damage. The proposition that rolling the window back up is an attempt to hide something does not hold water when Mr. Martinez opted to open the door completely. (R.R. III 10). This action is completely innocent and should not have been alarming to any reasonable person. And it is certainly not indicative of criminal activity.

*Articulable Facts – Nervous Demeanor*

Nervousness during a police encounter is not suspicious or indicative of

criminal activity. Although it can be used a factor to determine reasonable suspicion, it is a weak factor in determining whether or not there are hidden narcotics. *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012); *McQuarters v. State*, 58 S.W.3d 250, 257 (Tex. App.—Fort Worth 2001, pet. ref'd). It is also a common experience to exhibit nervousness when pulled over by the police, even if the only crime committed was a traffic violation. Justice Brown put it very eloquently in 1896 when discussing the view of actions certain people make when faced with law enforcement:

> "…it is not universally true that a man, who is conscious that he has done a wrong, "will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right and proper;" since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that "the wicked flee when no man pursueth, but the righteous are as bold as a lion."

*Alberty v. United States*, 162 U.S. 499, 511 (1896). Also either act of nervousness or calm have been construed as suspicious. *United States v. Himmelwright*, 551 F.2d 991,992 n.2 (5th Cir. 1977), *United States v. Mallides*, 473 F.2d 859, 861 (9th Cir. 1973)(officer testified that the defendant's calm demeanor was suspicious).

When it comes to general physical states such as nervousness or calmness, the interpretation is not based upon objective standards but as perceived through the eyes of the observer. As a hammer, everything appears to be a nail because a

hammer's only job is to hit nails. When consulting a surgeon, the surgeon's likely treatment will be surgery because that is the subjective view of a surgeon. The same goes for law enforcement. Law enforcement's job is to enforce the laws and control crime. An officer is going to view either nervousness or calmness as indicative of criminal activity based upon that officer's predisposed desire to preform effectively and stop crime. That is why a suspect's demeanor is not helpful in developing reasonable suspicion because it is not an objective articulable fact indicative of criminal activity.

*Articulable Facts – The Door*

Stepping out of the vehicle and locking the door is also not indicative of criminal activity. The State argued at trial that this was an indication that Mr. Martinez was hiding something illegal. The State was simply making jumps in logic. Even though there was some debate as to whether or not locking the door was intentional since Corporal Fineman opened it easily, locking and shutting the door is an attempt to keep the police from entering the vehicle. (R.R. III 19). That was an absolute Constitutional right that Mr. Martinez had. And if he did lock it intentionally, he was well within his right to do so. So the State was essentially arguing that his assertion of his rights was indicative of criminal activity. That is in the same vein as "if he refused to speak with the police, he must have something to

10

hide." Arguing that one's exercise of rights is a basis for criminal activity has long been frowned upon. Exercise of rights cannot be used as a tipping point to give an officer reasonable suspicion. *Wade*, 422 S.W.3d at 669.

*Articulable Facts – High Crime Area*

The level of criminal activity in the area is not in and of itself indicative of criminal activity. *Scott v. State,* 549 S.W.2d 170, 172–73 (Tex. Crim. App. 1976); *Crain v. State*, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010). It merely poses as a backdrop and using it as a strong factor would devalue the rights of those that live in a high crime neighborhood.

*Totality of the Circumstances*

When viewing these factors under the totality of the circumstances, Officer Cade did not have reasonable suspicion to extend the detention. Mr. Martinez was nervous and exercised his rights in a high crime neighborhood. There is nothing at all suspicious about that. It is not surprising that those in a high crime neighborhood have multiple encounters with police that are not always justified or appropriate. Given the circumstances of where he was, he had every right to be nervous and keep the police from entering his vehicle. The record is void of any evidence that Mr. Martinez was rude or posed a threat or did anything untoward. He was simply nervous and did not want the police to search his vehicle. But that was somehow odd to Officer Cade, and even if it was odd it was not indicative of criminal activity.

The very heart of the Fourth Amendment is the right to keep the government from detaining a person or riffling through one's possessions without justification.

The actions taken by Mr. Martinez and perceived by Officer Cade did not rise to the level of reasonable suspicion. *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. They only provided the officer with a mere inchoate hunch. *Id*. Therefore the trial court erred in finding that there was reasonable suspicion and denied Mr. Martinez' motion to suppress. Further, the Second Court of Appeals erred when it affirmed the trial court's denial.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Petitioner respectfully prays that this Court grant discretionary review and allow each party to fully brief and argue the issues before the Court of Criminal Appeals, and that upon reviewing the judgment entered below, that this Court reverse the opinion of the Second Court of Appeals.

Respectfully submitted,

/s/ Abe Factor
Abe Factor
TBN: 06768500
Factor, Campbell & Collins
Attorneys at Law
5719 Airport Freeway
Fort Worth, Texas 76117
Phone: (817) 222-3333
Fax: (817) 222-3330
Email: lawfactor@yahoo.com
Attorneys for Petitioner
Rhonald Martinez

12

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count for the portion of this filing covered by Rule 9.4(i)(1) of the Texas Rules of Appellate Procedure is 3,514.

/s/ Abe Factor
Abe Factor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been furnished to counsel for the State's Prosecuting Attorney and the Tarrant County District Attorney by a manner compliant with the Texas Rules of Appellate Procedure, on this 7th day of May , 2015.

/s/ Abe Factor
Abe Factor

## APPENDIX

13

1. Opinion of the Second Court of Appeals



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00610-CR

RHONALD MARTINEZ A/K/A                                          APPELLANT
RONALD MARTINEZ

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1253416D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Rhonald Martinez a/k/a Ronald Martinez appeals his conviction and forty-year sentence for possessing and intending to deliver between four and two hundred grams of methamphetamine.[2] He contends that the trial court erred

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. §§ 481.102(6), .112(a), (d) (West 2010).

by denying his motion to suppress evidence that the police obtained through an alleged violation of his constitutional rights. We affirm.

**Background Facts**

One night in September 2011, Fort Worth Police Department Officer Aaron Cade was on patrol in a "high crime, very high drug activity area" when he saw a car with a defective license plate and an expired registration.[3] Officer Cade conducted a traffic stop. As he approached appellant's car, appellant lowered his driver's side window, quickly raised it back up, and began stepping out of the car. Officer Cade instructed appellant to sit in the car, but appellant said that his window was not working. Nonetheless, appellant sat in the car and again lowered the window.

Officer Cade asked appellant for his identification and told him why he had been stopped. Then, Officer Cade asked him where he was going and what he was doing. Appellant could not answer those questions. He appeared to be "really nervous"; his hand shook as he handed Officer Cade his driver's license, his voice was unsteady, and he was sweating.[4] When Officer Cade asked appellant why he was nervous, appellant said, "I respect the police." Officer Cade asked whether appellant had anything illegal in the car, and appellant said

---

[3]The facts in this section are based on Officer Cade's testimony. Appellant testified to different facts.

[4]Officer Cade testified that it was not hot in the late night when he pulled appellant over.

2

that he did not.  Based on appellant's strange behavior, Officer Cade called for the help of another officer.

By consent, Officer Cade searched appellant's clothing but found nothing of consequence.  Officer Cade also asked if he could search appellant's car.  Appellant initially said yes.  But when Officer Cade attempted to open the car, he noticed that appellant had locked its doors and had left its keys in the ignition with the car still running.  Because appellant had given consent for Officer Cade to search the car but had then locked it with the keys inside, Officer Cade became "fairly certain . . . that [appellant] was hiding something."  Officer Cade called for a narcotics dog and detained appellant in the back of the patrol car.[5]  Appellant then withdrew his consent for the search of the car.

Minutes later, the narcotics dog—"Z"—arrived and "hit" on the driver's side door of appellant's car.  The police, believing that they had developed probable

_____

[5]Officer Cade recognized that appellant did not have a weapon, had followed all instructions, and had not acted in a threatening way.  When asked why he had placed appellant in the patrol car, Officer Cade testified,

> [I]t was a couple of different reasons.  One is [that] when the dog gets on scene, you can't have anyone standing outside the vehicle.  The other one is just based on the way he was acting.  I didn't know what he was going to do.  It's safer for me and safer for him if I just put him in the back of my vehicle.
>
> . . . .
>
> It's been my experience that when people act nervous like that, when they do strange things like that, that sometimes . . . they may run, which poses . . . an officer safety issue.  They might fight, which again poses an officer safety issue.

3

cause to search the car, found a way to open it, searched it without obtaining a warrant, and discovered a baggie containing methamphetamine under the driver's side seat. Appellant's car also contained marijuana, more methamphetamine in the glove box, several empty baggies that had the potential to be used for packaging methamphetamine, and a syringe. Officer Cade arrested appellant without writing citations or warnings for the traffic offenses. From the traffic stop to appellant's arrest, thirteen minutes elapsed.

A grand jury indicted appellant with possessing while intending to deliver between four and two hundred grams of methamphetamine. Appellant's indictment included a paragraph alleging that he had been previously convicted of two felony offenses. The trial court appointed counsel to represent appellant. Appellant filed several pretrial motions, including a motion to suppress evidence "obtained as a result of illegal acts on behalf of the Government." Specifically, in the motion to suppress, appellant contended that his roadside detention was not reasonable.

The trial court denied appellant's motion to suppress. Appellant waived his right to a jury trial and pled not guilty. At trial, he testified that he did not own the car he was driving on the night of his arrest, that he never gave consent for Officer Cade to search the car or his clothes, and that he did not know drugs were in the car before his arrest.

4

The trial court convicted appellant, found the allegations in the indictment's enhancement paragraph to be true, received a presentence investigation report, and sentenced him to forty years' confinement. Appellant brought this appeal.

**Denial of Motion to Suppress**

In his only issue, appellant contends that the trial court erred by denying his motion to suppress. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).

Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, we must view the evidence in the light most favorable to the trial court's ruling on a motion to suppress. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the court's ruling, or when there are no explicit fact findings, we imply the necessary fact findings that would support the court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819; *see also Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013) ("[T]he question of whether a certain set of historical facts gives rise to reasonable suspicion is reviewed *de novo*.").

In the trial court, appellant argued,

> The . . . subjective . . . I think he may be hiding something, is not specific. It is not articulable. It is not physical. It is nothing more than speculation[,] and speculation is not sufficient, one, to detain someone as he was on a traffic citation . . . and, two, to search his vehicle as they did. . . .
>
> The law is pretty clear that a police officer's idea that somebody is nervous, particularly this police officer since he's stated he has no medical or psychological training, it is not sufficient. Although he is clearly vague and arbitrary and evasive, I think we have established for the Court that the business of the traffic citation was concluded when [Officer Cade] embarked on this fishing expedition, unauthorized detention, and illegal search of the vehicle and the trunk.

6

The State contended that appellant's traffic offenses justified the initial traffic stop and that appellant's acts after the stop justified a modestly prolonged detention. Appellant replied,

> I think the Court can see there may have been a legitimate basis for a traffic stop,[6] but . . . that legitimate basis . . . evaporated because this officer wasn't the least bit interested in the traffic stop or . . . discussing the traffic stop or doing any of the things that he was legitimately entitled to do, but rather, in fact . . . [was] intent on a fishing expedition.

The trial court overruled the motion to suppress, finding that traffic violations supported the original detention and that "given the circumstances involved in the case[,] [Officer Cade] also had a reasonable suspicion to continue to detain [appellant] for a brief period of time and to summon . . . the drug dog."

On appeal, appellant similarly argues that the extension of his original detention was unlawful because it was "longer than . . . necessary to effectuate the reason for the detention." He contends that Officer Cade did not develop "additional reasonable suspicion"—outside of the traffic offenses—to detain him beyond the time it would take to issue a warning or citation.

---

[6]Similarly, appellant testified at trial and has conceded on appeal that his initial detention for traffic violations was legitimate. Moreover, appellant does not expressly contend on appeal that the warrantless search of the car violated his rights for reasons unrelated to the extension of his detention until the narcotics dog arrived. When a "[narcotics] dog alerts, the presence of drugs is confirmed, and police may make a warrantless search." *Matthews v. State*, 431 S.W.3d 596, 603–04 (Tex. Crim. App. 2014). Finally, while appellant challenges the justification for his extended detention, he does not independently challenge the reasonableness of the length of that detention.

7

No evidence obtained by an officer in violation of the federal or Texas constitutions shall be admitted against the accused on the trial of any criminal case. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct by showing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant proves that a search or seizure occurred without a warrant, the State must establish that the search or seizure was reasonable. *Amador*, 221 S.W.3d at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A temporary detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity.[7] *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Matthews*, 431 S.W.3d at 602–03. Reasonable suspicion exists when based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude

---

[7]A traffic stop is a temporary detention for Fourth Amendment purposes. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Davis v. State*, 947 S.W.2d 240, 243–45 (Tex. Crim. App. 1997)).

8

that a particular person is, has been, or soon will be engaged in criminal activity. *Matthews*, 431 S.W.3d at 603; *Ford*, 158 S.W.3d at 492.  Reasonable suspicion requires only "some minimal level of objective justification."  *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

In determining whether an officer has reasonable suspicion, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent.  *Matthews*, 431 S.W.3d at 603.  "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.*; *see Torrence v. State*, No. 02-10-00027-CR, 2011 WL 2518807, at *4 (Tex. App.—Fort Worth June 23, 2011, no pet.) (mem. op., not designated for publication) ("We do not separately evaluate and accept or reject the individual objective facts relied on to establish reasonable suspicion because doing so does not adequately consider the totality of the circumstances . . . .").

"[C]ircumstances as will raise suspicion that illegal conduct is taking place need not be criminal in themselves.  Rather, they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be."  *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). The facts must give rise to reasonable suspicion that "*something* of an apparently criminal nature is brewing" but need not show "that the detainee has committed, is committing, or is about to commit . . . a particular and distinctively identifiable penal offense."  *Derichsweiler v. State*, 348 S.W.3d 906, 916–17 (Tex. Crim.

9

App.), *cert. denied*, 132 S. Ct. 150 (2011). At a minimum, the "suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Crockett*, 803 S.W.2d at 311; *see also Torrence*, 2011 WL 2518807, at *5 (recognizing that "objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person").

"Reasonable suspicion is not a carte blanche for a prolonged detention and investigation." *Matthews*, 431 S.W.3d at 603. Thus, after completion of the purposes of a legitimate traffic stop, the officer must have reasonable suspicion to believe that additional criminal activity has occurred or is being committed to justify continued detention of the suspect. *Richardson v. State*, 402 S.W.3d 272, 277 (Tex. App.—Fort Worth 2013, pet. ref'd) (explaining that a traffic stop may not be used as a fishing expedition for unrelated criminal activity); *see also McAnally v. State*, No. 02-08-00342-CR, 2009 WL 3956749, at *3 (Tex. App.—Fort Worth Nov. 19, 2009, pet. ref'd) (mem. op., not designated for publication) ("[I]f a valid traffic stop evolves into an investigative detention of other criminal activity (such as possession of a controlled substance) so that a canine sniff can take place, reasonable suspicion is required to prolong the detention . . . ."). Such reasonable suspicion may arise from information discovered by the officer during the lawful initial detention. *Richardson*, 402 S.W.3d at 277.

The question here is whether Officer Cade had specific and articulable facts that, when viewed collectively and when combined with rational inferences from those facts, led him to reasonably suspect that appellant had engaged in criminal activity apart from the traffic violations and therefore prolong appellant's detention until the narcotics dog arrived. In *Matthews*, in addition to an anonymous tip, the court of criminal appeals relied on the defendant's presence in a high-crime area late at night, his odd behavior of "just sitting" in a van with the engine off, his furtive movement to apparently conceal something near the driver's door, and his refusal to comply with officers' request to show his hands as facts supporting temporary detention before the arrival of a narcotics dog. 431 S.W.3d at 605.

Similarly, in *Hamal*, the court of criminal appeals held that an officer had reasonable suspicion to continue a traffic-offense-based detention for the arrival of a narcotics dog. 390 S.W.3d at 304. The court concluded that the late-night traffic stop, the defendant's nervousness (including her shaking hands),[8] her deception to the officer about her prior criminal record, and details about her prior criminal record (including arrests for drug offenses) supported the prolonged detention. *Id.* at 308; *see also Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim.

---

[8]Appellant implores us to not consider his nervousness as a factor affecting our reasonable suspicion determination. "Nervousness and a refusal to answer an officer's questions are insufficient by themselves to constitute reasonable suspicion," but nervous or evasive behavior is a relevant factor to determine reasonable suspicion. *Wade*, 422 S.W.3d at 670–71.

11

App. 2010) (explaining that location and time of day are relevant considerations in a reasonable-suspicion analysis); *Sieffert v. State*, 290 S.W.3d 478, 484 (Tex. App.—Amarillo 2009, no pet.) (explaining that "the time of day and the level of criminal activity in an area may be factors to consider in determining reasonable suspicion" but that a reasonable suspicion determination cannot stand on these facts alone).

Lower courts have likewise upheld continued detentions under facts similar to those in this case. Most recently, in *Adkins v. State*, one of our sister courts held that the police had reasonable suspicion to detain a defendant when the defendant was very nervous, was found in a high-crime area and near a crime scene, and made a furtive gesture by reaching into his waistband and placing something in a truck. No. 01-13-00627-CR, 2014 WL 5465701, at *3–4 (Tex. App.—Houston [1st Dist.] Oct. 28, 2014, no pet.) (mem. op., not designated for publication); *see also Amorella v. State*, 554 S.W.2d 700, 701–03 (Tex. Crim. App. 1977) (reasonable suspicion existed where defendant was with two other men with trunk open outside business after hours, in a known high-crime area for burglaries, and group immediately closed trunk and left after seeing officers).

Similarly, in *Erskin v. State*, the same court held that the police had reasonable suspicion for a prolonged roadside detention based on the defendant's unusual and nervous acts during a traffic stop and the stop's occurrence in an area known for drug crime. No. 01-08-00866-CR, 2010 WL 2025754, at *5–6 (Tex. App.—Houston [1st Dist.] May 20, 2010, no pet.) (mem.

12

op., not designated for publication); *see also Kimbell v. State*, No. 05-11-01211-CR, 2013 WL 4568049, at *6 (Tex. App.—Dallas Aug. 26, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that an officer had reasonable suspicion for an extended detention when the defendant was nervous as exhibited by her shaking hands, failed to make eye contact, and had a criminal history that included arrests for drug offenses); *Kelly v. State*, 331 S.W.3d 541, 549–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (concluding that a defendant's nervousness, furtive movements, and response to an officer's questions gave the officer reasonable suspicion to continue detention); *Sanchez v. State*, No. 13-07-00516-CR, 2008 WL 6842090, at *6–7 (Tex. App.—Corpus Christi Aug. 29, 2008, no pet.) (mem. op., not designated for publication) (concluding that the defendant's nervousness, his presence in a high-crime area, his erratic behavior, and his implausible story to the police created reasonable suspicion for extended detention); *Dinh v. State*, No. 02-02-00036-CR, 2003 WL 1090476, at *2 (Tex. App.—Fort Worth Mar. 13, 2003, no pet.) (mem. op., not designated for publication) ("We conclude that appellant's furtive movements combined with his extreme nervousness and denial of responsibility for anything a search might reveal gave rise to reasonable suspicion that he had contraband in the vehicle.")

We conclude that appellant's prolonged detention was justified for reasons similar to those in the cases cited above. Officer Cade saw appellant behave erratically and furtively; upon Officer Cade's approach, appellant rolled down his

13

driver's side window, quickly rolled it back up, began to get out of his car to meet Officer Cade, apparently lied to Officer Cade about the window's ability to function, and rolled it down again.[9] Appellant then showed signs of nervousness. He sweat profusely, had shaking hands, and had a trembling voice.

Next, appellant acted in a way that signaled that he might have been hiding something. First, he gave evasive or unsure answers about where he had been and where he was going. Then, after granting consent for Officer Cade to search the car, he prevented Officer Cade from doing so by locking the car with its keys in the ignition.[10] Finally, all of these actions occurred late at night and while appellant was in a "high crime, very high drug activity area."

None of these factors, when viewed individually, would generate reasonable suspicion of criminal activity. But we conclude that when viewed

---

[9]On appeal, appellant argues that his acts and statement regarding the window were not suspicious, reasoning,

> Rolling down the window and rolling it back up does not mean it is not broken. It could have been off the tracks or the mechanism [could have been] less than functional. . . . It is a common experience to roll down a car window and think that it is somehow malfunctioning and so the window is rolled up to prevent further damage.

Officer Cade did not testify that appellant presented this line of reasoning to him at the scene. We cannot conclude that it was unreasonable for Officer Cade to believe that appellant was acting oddly and suspiciously by rolling the window down and up and then nonetheless stating that the window was broken.

[10]During his testimony, appellant appeared to agree that a person's locking keys in a car with the car still running might create an appearance that the person is trying to keep something hidden.

14

collectively, these factors constitute sufficient specific and articulable facts, in light of Officer Cade's experience and personal knowledge and when coupled with reasonable inferences therefrom, to reasonably warrant appellant's continued detention.[11] *See Matthews*, 431 S.W.3d at 605; *Simpson v. State*, 29 S.W.3d 324, 329 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (holding that there was reasonable suspicion when in addition to the defendant's nervousness, the defendant immediately got out of the car when he was stopped, put his keys in his pocket, and gave abrupt and unsure answers to the officer's questions).

Appellant contends that Officer Cade "did not even attempt to accomplish" writing a citation or warning for the traffic offenses. But even if we were to assume that Officer Cade detained appellant with no intent of enforcing the traffic offenses, we would still conclude that he had an objective basis for the prolonged detention, which is all that the law requires. *See Matthews*, 431 S.W.3d at 603.

For these reasons, we hold that the trial court did not err by overruling appellant's motion to suppress, and we overrule his only issue.

---

[11]Although appellant's testimony about events occurring after the traffic stop, which was elicited after the trial court's suppression ruling, differed from Officer Cade's testimony, the trial court was entitled to accept Officer Cade's testimony and reject appellant's testimony. *See Cisneros v. State*, 290 S.W.3d 457, 465 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd).

## Conclusion

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 29, 2015